**Docket No. 22-16335**

# UNITED STATES COURT OF APPEALS
### FOR THE
# NINTH CIRCUIT

DESIREE MARTINEZ,
*Plaintiff-Appellant,*

v.

CHANNON HIGH,
*Defendant-Appellee.*

Appeal from a Decision of the United States District Court for the Eastern District of California,
No. 1:15-cv-00683-DAD-SKO • Honorable John A. Mendez

———————————————————

# ANSWERING BRIEF OF APPELLEE
# CHANNON HIGH

———————————————————

| Suzanne M. Nicholson | Bruce D. Praet |
|---|---|
| SUZANNE M. NICHOLSON, ATTORNEY AT LAW | FERGUSON, PRAET & SHERMAN |
| 428 J Street, 4th Floor | 1631 East 18th Street |
| Sacramento, CA 95814 | Santa Ana, CA 92705 |
| (916) 361-6551 (Tel) | (714) 953-5300 (Tel) |
| suzanne@smnlegal.com | bpraet@aol.com |

Attorneys for Appellee Channon High

## **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT……………………………………………..1

STATEMENT OF ISSUES………………………………………………...1

STATEMENT OF THE CASE…………………………………………….…1

      Allegations of the operative complaint……………………………...…1

      Defendants' first motion for summary judgment……………………..….4

      Martinez's first appeal………………………………………….…..6

      High's motion for summary judgment on remand…………………………9

      Martinez's current appeal……………………………………………10

STATEMENT OF FACTS……………………………………………….…11

STANDARDS OF REVIEW………………………………………………...13

SUMMARY OF ARGUMENT……………………………………………...14

ARGUMENT………………………………………………………...16

I.      HIGH DID NOT WAIVE HER QUALIFIED
        IMMUNITY DEFENSE, AND THE DISTRICT
        COURT DID NOT ABUSE ITS DISCRETION
        WHEN IT ALLOWED HER TO BRING A
        SUCCESSIVE MOTION FOR SUMMARY
        JUDGMENT ON THAT ISSUE……………………………………..…16

        A.     The rule of waiver in successive appeals does
              not apply where, as here, there simply was no
              prior appeal involving the party against whom
              the claim of waiver is being made…………………………….…16

B.    The district court had the discretion to entertain High's successive motion for summary judgment based on qualified immunity, and did not abuse that discretion here……………………………………….…....22

II.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR HIGH BASED ON QUALIFIED IMMUNITY……………………………………….…..24

A.    The law of qualified immunity……………………………………24

B.    Even taking the facts most favorable to Martinez as true, there was no binding, clearly established law in 2013 that would have put High on notice her conduct violated a constitutional right………………………………….…..26

CONCLUSION……………………………………………………….…..34

STATEMENT OF RELATED CASES…………….….………………….....35

CERTIFICATE OF COMPLIANCE……………………………………....36

CERTIFICATE OF SERVICE……………………………………………37

# **TABLE OF AUTHORITIES**

## **Cases**

*American Federation of Musicians of United States & Canada v. Paramount Pictures Corp.,*
   903 F.3d 968 (9th Cir. 2018) ............................................................... 13

*American States Ins. Co. v. Dastar Corp.,*
   318 F.3d 881 (9th Cir. 2003) ............................................................... 16

*Ashcroft v. Al-Kidd,*
   536 U.S. 731 (2011) ......................................................................... 25

*Behrens v. Pelletier,*
   516 U.S. 299 (1996) ......................................................................... 18

*Boyd v. City & County of San Francisco,*
   576 F.3d 938 (9th Cir. 2009) ............................................................... 14

*Crocker v. Piedmont Aviation,*
   49 F.3d 735 (D.C. Cir. 1995) ............................................................... 19

*Elder v. Holloway,*
   510 U.S. 510 (1994) ......................................................................... 25

*Francisco Jose Rivero v. City and County of San Francisco,*
   316 F.3d 857 (9th Cir. 2002) ............................................................... 17

*Hoffman v. Tonnemacher,*
   593 F.3d 908 (9th Cir. 2010) ....................................................... 14, 17, 22, 23

*Horton by Horton v. City of Santa Maria,*
   915 F.3d 592, fn. 10 (9th Cir. 2019) ....................................................... 17

*Jiminez v. Franklin,*
   680 F.3d 1096 (9th Cir. 2012) ............................................................. 19

*Jones v. Royal Admin. Services, Inc.,*
   887 F.3d 443 (9th Cir. 2018) ............................................................... 13

*Kallstrom v. City of Columbus,*
   136 F.3d 1055 (6th Cir. 1998) ............................................................. 33

iii

*Keepseagle v. Purdue*,
856 F.3d 1039 (D.C. Cir. 2017) ........................................................................ 19

*Kennedy v. Ridgefield City*,
439 F.3d 1055 (9th Cir. 2006) .................................................................. *passim*

*Kisela v. Hughes*,
138 S.Ct. 1148 (2018) ...................................................................................... 24

*Knox v. Southwest Airlines*,
124 F.3d 1103 (9th Cir. 1997) ........................................................... 17, 22, 23

*L.W. v. Grubbs*,
974 F.2d 119 ............................................................................................. 31, 32

*Lowery v. Channel Comm'n, Inc.*
(In re Cellular 101, Inc.), 539 F.3d 1150 (9th Cir. 2008) .................................. 19

*Manriquez v. Ensley*,
46 F.4th 1124 (9th Cir. 2022) ............................................................................ 13

*Martinez v. Clovis*,
943 F.3d 1260 (9th Cir. 2019) .................................................................. *passim*

*Martinez. Phillips v. County of Allegheny*,
515 F.3d 224 (3rd Cir. 2008) ............................................................................ 33

*Medical Ctr. Pharm. v. Holder*,
634 F.3d 830 (5th Cir. 2011) ............................................................................ 19

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ......................................................................................... 17

*Munoz v. City of Imperial*,
667 F.2d 811 (9th Cir. 1982) ............................................................................ 19

*Nelson v. City of Madison Heights*,
141 F.Supp.3d 726 ........................................................................................... 33

*Okin v. Village of Cornwall-on-Hudson Police Department*
577 F.3d 415 (2d Cir. 2009) ....................................................................*passim*

*Ortiz v. Jordan*,
562 U.S. 180 (2011) ......................................................................................... 18

iv

*Plumhoff v. Rickard*,
572 U.S. 765 (2014) ........................................................................ 25

*Price v. Kramer*,
200 F.3d 1237 (9th Cir. 2000) ...................................................... 17

*Sales v. Grant*,
224 F.3d 293 (4th Cir. 2000) ........................................................ 19

*Schafer v. Cnty. of Santa Barbara*,
868 F.3d 1110 (9th Cir. 2017) ...................................................... 25

*Shearer v. Titus*,
916 F.3d 293 (3rd Cir. 2019) ........................................................ 19

*Sierra Club v. Department of Transportation*,
948 F.2d 568 (9th Cir. 1991) ........................................................ 17

*Singleton v. Wuff*,
428 U.S. 106 (1976) ...................................................................... 14

*Summe v. Kento County Clerk's Office*,
604 F.3d 257 (6th Cir. 2010) ........................................................ 18

*Thyssen Steel Co. v. M/V Kavo Yerakas*,
911 F.Supp. 263 (S.D. TX 1996) .................................................. 19

*Tortu v. Las Vegas Metro. Police Dep't*,
556 F.3d 1075 (9th Cir. 2009) ...................................................... 18

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
793 F.2d 1034 (9th Cir. 1986) ...................................................... 20

*United States v. Jingles*,
702 F.3d 494 (9th Cir. 2012) ........................................................ 28

*United States v. Nagra*,
147 F.3d 875 (9th Cir. 1998) ........................................................ 19

*United States v. Northrop Corp.*,
59 F.3d 953, fn. 2 (9th Cir. 1995) ................................................ 14

*United States v. Radmall*,
340 F.3d 798 (9th Cir. 2003) ........................................................ 19

*Ventura Packers, Inc. v. F/V Jeanine Kathleen*,
    305 F.3d 913 (9th Cir. 2002) ............................................................ 13

*Whitford v. Boglino*,
    63 F.3d 527 (7th Cir. 1995) .............................................................. 22

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*,
    810 F.2d 243 (D.C. Cir. 1987) ........................................................ 19

**Statutes**

42 U.S.C. § 1983 ...................................................................................... 2

**Other**

Fed. R. Civ. P. 54 ........................................................................... *passim*

## JURISDICTIONAL STATEMENT

Appellee Channon High agrees with the jurisdictional statement set forth by Appellant Desiree Martinez. AOB 1.

## STATEMENT OF ISSUES

1. Whether the district court had discretion to allow defendant High to bring a successive motion for summary judgment on the issue of qualified immunity.

2. Whether the district court properly granted summary judgment for High on qualified immunity grounds because it was not clearly established in 2013 that disclosing a domestic violence allegation to an abuser, who had already been charged with and was engaged in criminal proceedings related to domestic violence against the alleged victim, violated the victim's due process rights.

## STATEMENT OF THE CASE

### Allegations of the operative complaint

This case arises out of the alleged physical and sexual abuse of Plaintiff Desiree Martinez by her boyfriend, Kyle Pennington, which began in April of 2013. 3 ER 386. Pennington was an officer with the Clovis Police Department until June of 2013. 3 ER 383. In 2015, Martinez filed an action against Pennington, his parents Kim and Connie Pennington, the City of Clovis, the City of Sanger, Clovis

1

Police Officers Kristina Hershberger and Jesus Santillan, Clovis Police Department employee Channon High, the City of Sanger, Sanger Police Officers Angela Yambupah and Ralph Salazar, and Sanger Police Sergeant Fred Sanders. Dkt. No. 6. She filed a second amended complaint in December of 2022, which alleged substantive due process and equal protection claims against the Cities of Clovis and Sanger and their officers under 42 U.S.C. § 1983. 3 ER 382-400.

Martinez alleged she and Pennington began dating in February of 2013, and by April of 2013 he was emotionally, physically, and sexually abusing her. 3 ER 386. He would then manipulate and/or threaten her to keep her from reporting his abuse. 3 ER 387. When she did report incidents of abuse, to either the Clovis or Sanger Police Departments, Martinez alleged they failed to respond in such a manner or provide her with services as were appropriate for victims of domestic violence. 3 ER 387-388.

Specifically, Martinez alleged that Hershberger responded to a domestic violence call on May 2, 2013 and failed to respond appropriately. 3 ER 388. After Hershberger left, Pennington inflicted additional abuse on Martinez. 3 ER 389.

Martinez also alleged that on May 21, 2013, she disclosed Pennington's abuse to a Clovis Police Officer not named in her complaint, and someone from the Clovis Police Department disclosed her contact with that officer to Pennington that

same day. 3 ER 389. Following that disclosure, Martinez alleged Pennington further abused her. 3 ER 389-390.

Martinez also alleged that on May 29, 2013, she made an anonymous call to the Clovis Police Department to report her abuse and seek legal information. 3 ER 390. She alleged that High disclosed Martinez's anonymous call to Pennington, after which Martinez suffered "one of the worst periods of abuse" by Pennington. 3 ER 390-391. This abuse was alleged to have occurred between June 1 and June 4, 2013. 3 ER 391.

Martinez alleged that on June 4, Sanger Police Officers responded to the residence following 911 calls by the neighbors. 3 ER 391. Again, Martinez alleged the officers' failures to respond appropriately resulted in her being beaten and sexually assaulted by Pennington that night (June 4, 2013). 3 ER 391-392. Martinez reported this abuse, and on June 5, 2013, a warrant issued for Pennington's arrest. 3 ER 392.

Martinez obtained a restraining order against Pennington in June of 2013, but he violated the order and continued to cohabit with and abuse Martinez into September of 2013. 3 ER 393-394. Martinez alleged that High and another department employee would alert Pennington to Martinez's calls for service which resulted in further abuse. 3 ER 394.

Pennington was ultimately charged with various counts of domestic violence, false imprisonment, assault, criminal threats, dissuading a witness, and violation of a restraining order. 3 ER 392. In April of 2014, Pennington was tried and convicted of multiple violations of the June 2013 restraining order, but the jury hung on other charges. 3 ER 395. In July of 2014, Pennington plead guilty to one count of domestic violence, and Martinez was granted a ten-year restraining order protecting herself and her daughter. 3 ER 395.

**Defendants' first motion for summary judgment**

In August of 2017, the City of Sanger, City of Clovis, Officers Hershberger and Yambupah, Sergeant Sanders, and High filed a motion for summary judgment, or alternatively, for summary adjudication of issues.[1] Dkt. No. 76. All defendants argued there was no evidence of any violation of Martinez's substantive due process rights. Dkt. No. 76, p. 2. High presented evidence to show that any alleged disclosures she made to Pennington were not made under color of law but outside of her official duties, and argued that she did not participate in creating a dangerous situation or act with deliberate indifference towards placing Martinez in such a situation. Dkt. No. 76, p. 3; Dkt. No. 76-1, pp. 10-11. All individual

---

[1] Pennington's parents filed a separate motion for summary judgment, which is not relevant here and so is not addressed. Dkt. Nos. 75-75.6.

defendants also raised the defense of qualified immunity. Dkt. No. 76, p. 5; Dkt. No. 76-1, pp. 16-18; Dkt. No. 77, p. 2.

The district court heard argument on October 18, 2017. Dkt. No. 91. It granted summary judgment on all claims against the City of Clovis, City of Sanger, Officer Hershberger, Officer Yambupah, and Sergeant Sanders. Dkt. No. 94, p. 2. The court found Hershberger, Yambupah and Sanders were entitled to qualified immunity because the law was not clearly established that their conduct violated Martinez's constitutional rights. Dkt. No. 91, pp. 59-60. It found that the most factually analogous case of *Okin v. Village of Cornwall-on-Hudson Police Department*, 577 F.3d 415 (2d Cir. 2009) was not similar enough to the present case to satisfy the "clearly established" prong of the analysis necessary for Martinez to defeat a claim of qualified immunity by these officers because, among other things, the officers in *Okin* had displayed an "open camaraderie" with the alleged abuser. Dkt. No. 91, pp. 60-62. Martinez failed to identify any other case with facts sufficiently similar to the present one to put these officers on notice they were violating clearly established law. Dkt. No. 91, p. 62.

The district court granted summary judgment for High on the equal protection claim but denied her motion on the substantive due process claim. Dkt. No. 94, p. 3. The district court first found there was a triable issue of fact as to whether High was acting under color of state law, given the dates and times of the

5

alleged disclosures she made Pennington. Dkt. No. 91, pp. 43-45, 63. Addressing whether High was entitled to qualified immunity even if she were acting under color of state law, the district court found that in 2013 the law was clearly established that an officer disclosing confidential information concerning a domestic violence victim to the alleged abuser constituted a violation of the victim's due process rights under the state-created danger doctrine. Dkt. No. 91, p. 63. The district court found that *Okin, supra,* would have put any reasonable officer on notice that such disclosures would "contribute[] to the vulnerability of a known victim" and embolden the alleged abuser. Dkt. No. 91, pp. 63-64. The court issued its formal order on November 3, 2017. 2 ER 267-270.

The parties stipulated that there was no reason to delay the issuance of a partial judgment on the summary judgment rulings in order to "permit an immediate appeal by the affected parties," and that the district court's ruling on the summary judgment motion should be certified for appeal pursuant to Federal Rule of Civil Procedure 54(b). 2 ER 261-264. On December 5, 2017, the district court issued a partial judgment in accordance with the stipulation to allow the parties to appeal to the Ninth Circuit. 2 ER 259-260.

**Martinez's first appeal**

Martinez filed an appeal from the partial judgment, in which she challenged the district court's grant of summary judgment for Officer Hershberger, Officer

6

Yambupah, and Sergeant Sanders. Dkt. 123, p. 4. On December 4, 2019, this Court issued a published opinion affirming summary judgment in favor of the officers. ER 232-258; *Martinez v. Clovis*, 943 F.3d 1260 (9th Cir. 2019).[2] This Court summarized the evidence concerning Hershberger's conduct on May 2, 2013 as including a disclosure to Pennington that Martinez had reported a prior incident of abuse in another jurisdiction, and that she also made comments to Pennington that she did not think Martinez was a "good fit" for him romantically. *Martinez,* at 1266-1267. That night, Pennington abused Martinez. *Id.* at 1267. This Court found this conduct satisfied the first element of the state-created-danger doctrine in that a reasonable jury could find Hershberger's conduct had enhanced the risk of harm to Martinez. *Id.* at 1272.

Similarly, this Court found that evidence concerning Sanders' conduct on June 4, 2013, wherein he instructed Yambupah not to arrest Pennington and simultaneously expressed the view that the Penningtons were "good people" and spoke positively of them, could lead a reasonable jury to conclude Pennington was thereby "emboldened to continue his abuse with impunity." *Martinez*, 943 F.3d at 1273.

---

[2] Appellee hereafter will reference the opinion by its published citation, rather than by its designation in the Excerpts of Record.

This Court then had no difficulty concluding that the foreseeability and deliberate indifference elements of the state-created-danger doctrine could be satisfied by Hershberger's and Sanders' conduct. *Martinez*, 943 F.3d at 1273-1274.

In spite of its conclusion that Hershberger and Sanders' conduct could establish a violation of a constitutional right under the state-created-danger doctrine, this Court agreed with the district court that the law governing their conduct was not clearly established at the time (2013) and these officers were entitled to qualified immunity. *Martinez,* 943 F.3d at 1274-1277. Martinez had relied upon *Okin* as a case sufficiently similar to the present one to put the officers on notice of the unlawfulness of their conduct, as it involved responding officers displaying a dismissive attitude towards her abuse and otherwise conveying by their behavior that the abuser could continue to engage in domestic violence with impunity. See *Martinez,* at 1276. The Second Circuit found in that case that such conduct could constitute a violation of the victim's constitutional rights. *Id.*; *Okin, supra,* 577 F.3d at 426-427. Nevertheless, this Court held that *Okin* had not been "embraced by a consensus of courts" and may be "in tension" with other precedents. *Martinez,* at 1276 (internal quotations and citations omitted). Therefore not every reasonable officer would have known "beyond debate" that such conduct would violate Martinez's due process rights. *Id.*

This Court held that "'it is the facts' of this case 'that clearly establish what the law is' going forward. [Citation.]" *Martinez,* 943 F.3d at 1276. It went on to specifically "establish the contours of the due process protections afforded victims of domestic violence in situations like this one." *Id*.

> "We hold today that the state-created danger doctrine applies when an officer reveals a domestic violence complaint made in confidence to an abuser while simultaneously making disparaging comments about the victim in a manner that reasonably emboldens the abuser to continue abusing the victim with impunity. Similarly, we hold that the state-created danger doctrine applies when an officer praises an abuser in the abuser's presence after the abuser has been protected from arrest, in a manner that communicates to the abuser that the abuser may continue abusing the victim with impunity. Going forward, the law in this circuit will be clearly established that such conduct is unconstitutional."

*Martinez*, at 1276-1277, fn. omitted.

**High's motion for summary judgment on remand**

The case was remanded to the district court. In July of 2020, the district court set a trial date of July 26, 2021. Dkt. No. 134. On May 10, 2021, new counsel from the same firm substituted in to represent High. On May 18, 2021, following a thorough review of the file and meet and confer efforts with Martinez's counsel, High's new counsel sought leave to file a second motion for summary judgment, in light of this Court's opinion in the first appeal concerning qualified immunity. Dkt. Nos. 138, 138-1, 138-2. Martinez objected. Dkt. No. 139. On June 11, 2021, the

9

district court denied without prejudice High's motion for leave to file a new motion for summary judgment and confirmed the existing trial date. Dkt. No. 145. It stated that if the trial were continued, it would entertain a pre-trial motion on the issue of qualified immunity. Dkt. No. 204, p. 2.

On July 20, 2021, on its own motion, the district court vacated the July 26, 2021 trial date and reset the trial for November 1, 2021. Dkt. No. 188. It later reset the trial date again for March 7, 2022. Dkt. No. 203.

The parties stipulated to, and the district court ordered, a briefing schedule for High's motion for summary judgment based on qualified immunity. Dkt. Nos. 204, 205. The motion was fully briefed, and on January 10, 2022, the district court issued a written order granting High's motion based on qualified immunity and vacating the hearing date. 1 ER 3-5. The district court entered judgment in accordance with its order the same day. 1 ER 2.

**<u>Martinez's current appeal</u>**

Martinez filed a notice of appeal on January 11, 2022. Dkt. No. 214. On February 24, 2022 this Court issued an order dismissing the appeal for lack of jurisdiction because the judgment was not final or appealable. Dkt. No. 219. Martinez then made a motion for entry of final judgment under rule 54(b) in the district court. Dkt. Nos. 222, 222-1. The motion was unopposed, and on August 29,

2022 the district court issued an order granting the motion and certifying its summary judgment ruling (Dkt. No. 210) under rule 54(b). Dkt. No. 229.

Martinez then filed a timely notice of appeal on September 3, 2022. 3 ER 408-409.

## STATEMENT OF FACTS

On May 2, 2013, Martinez disclosed to Hershberger that Pennington had previously committed domestic violence against her in another jurisdiction (Dublin?) and had pushed her down the stairs earlier that evening. Dkt. No. 208-1, p.2 (UF 2, 3). Hershberger told Pennington of these disclosures, and also commented to Pennington that Martinez was not "a good fit" for him. Dkt. No. 208-1, p. 3 (UF 4, 5). The next day, when a detective called to interview Martinez, she recanted under pressure from Pennington. Dkt. No. 208-1, p. 3 (UF 6). There is no evidence, and Martinez does not claim in this appeal, that High had any communications with Pennington prior to this interview. Dkt. No. 208-1, p. 4 (UF 7); AOB 16-18.

On May 20, 2013, Martinez disclosed Pennington's abuse to Clovis Police Officer Taylor, and Pennington found out about her disclosure from someone who had seen Martinez and Taylor speaking together. Dkt. No. 208-1, pp. 4-5 (UF 8, 9). There is no evidence, and Martinez does not claim, that High disclosed her communication with Taylor to Pennington. (AOB 16-18.)

11

On May 29, Martinez made an anonymous and confidential call to the Clovis Police Department to get information on reporting abuse and the statute of limitations. Dkt. No. 208-1, p. 5 (UF 10). She also reported continued domestic violence by Pennington. 2 ER 10. She did not tell Pennington she had made this report. 2 ER 11.

On June 3-4, 2013, Martinez was assaulted by Pennington and the City of Sanger Police Department responded to a call for service. (Dkt. No. 208-1, p. 6 (UF 12; 2 ER 13.) Later on June 4, officers came to execute a search and arrest warrant and a detective interviewed Martinez about the abuse. (Dkt. No. 208-1, p. 6 (UF 13; 2 ER 13)

In September of 2013, High was on restricted duty with the Clovis Police Department, working the front office of the records department. Dkt. No. 208-1, p. 8 (UF 22); 3 ER 362. She understood from her POST training that if someone requests that a report of domestic violence be confidential, their name is not supposed to be disseminated to the public. 3 ER 364. On September 3, 2013, the same day Martinez was to testify at Pennington's preliminary hearing, High called Pennington on speakerphone and Martinez heard her disclose that Martinez had made the May 29, 2013 confidential report of abuse. 2 ER 11, 12; Dkt. No. 206-4, pp. 25-28; Dkt. No. 208-1, p.7 (UF 18). Immediately thereafter, Martinez suffered severe additional physical and sexual abuse by Pennington. 2 ER 11, 12. As a

12

result of that abuse, she was dissuaded from testifying against Pennington at his preliminary hearing. 2 ER 12-13; Dkt. No. 208-1, p. 7 (UF 19). Pennington continued to abuse Martinez until he was arrested again on September 18, 2013. 2 ER 13.

## STANDARDS OF REVIEW

Orders granting summary judgment are generally reviewed *de novo*. *Jones v. Royal Admin. Services, Inc.*, 887 F.3d 443, 447 (9th Cir. 2018). This Court applies the same standards as the district court and must determine whether the evidence, viewed in the light most favorable to the nonmoving party, presents any genuine issues of material fact, and whether the district court applied the correct legal principles. *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 916 (9th Cir. 2002). This Court may affirm a grant of summary judgment on any ground presented below, regardless of the ground relied upon by the district court. *m.*

A district court's decision granting qualified immunity is also reviewed de novo. *Manriquez v. Ensley*, 46 F.4th 1124, 1129 (9th Cir. 2022). "If there are disputed issues of material fact, [review is limited to] whether the defendant would receive qualified immunity, 'assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor.'" *Id.*

A district court's decision of whether to allow a successive motion for summary judgment on the issue of qualified immunity is reviewed for abuse of

discretion. *Hoffman v. Tonnemacher*, 593 F.3d 908, 910 (9th Cir. 2010). Under the abuse of discretion standard, this Court may not substitute its judgment for that of the district court, and may only find an "abuse" of discretion where "the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Boyd v. City & County of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009).

Finally, although not technically a standard of review, an appellate court's application of the waiver doctrine is discretionary. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *United States v. Northrop Corp.*, 59 F.3d 953, 957, fn. 2 (9th Cir. 1995).

## SUMMARY OF ARGUMENT

Appellant argues that High waived her right to raise the issue of qualified immunity in a successive motion for summary judgment because she did not appeal from the district court's denial of her initial motion on that ground. Neither the parties' stipulation to certify the partial judgment entered on the district court's initial summary judgment rulings, nor the certified partial judgment itself required High to appeal that initial denial in order to preserve her right to raise the issue in a successive motion. Moreover, the authorities Martinez cites concerning waiver do not apply where, as here, the party against whom the claim of waiver is being made was not a party to the prior appeal.

14

The law is well-established that a district court may permit successive motions for summary judgment on the issue of qualified immunity, and its decision to allow such a motion is a discretionary one. The district court did not abuse its discretion in allowing High to bring a successive motion on the issue here, as this Court's opinion in the first appeal established that the case relied upon by the district court to deny High qualified immunity in her first motion was not "clearly established" or controlling in this jurisdiction at the time of High's alleged conduct.

On the merits, the district court properly granted High's successive motion for summary judgment based on qualified immunity. The authority now cited by Martinez as "controlling" on the issue defines the alleged constitutional violation at too high a level of generality, and the case is readily distinguishable on its facts in any event.

///

///

///

///

///

///

///

15

# ARGUMENT

## I. HIGH DID NOT WAIVE HER QUALIFIED IMMUNITY DEFENSE, AND THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT ALLOWED HER TO BRING A SUCCESSIVE MOTION FOR SUMMARY JUDGMENT ON THAT ISSUE.

### A. The rule of waiver in successive appeals does not apply where, as here, there simply was no prior appeal involving the party against whom the claim of waiver is being made.

Martinez argues that High waived her qualified immunity defense by failing to take an interlocutory appeal from the order denying her first motion for summary judgment. AOB 21-31. The essence of her argument is that because the parties stipulated to certify the prior summary judgment ruling for immediate appeal, she was *required* to appeal the denial of her motion at that time and her failure to do so waived her ability to ever raise the issue again. Martinez is wrong.

First, the parties' stipulation and proposed order regarding certification and issuance of a partial judgment as to plaintiff's claims did not *require* the parties remaining in the litigation to seek an immediate appeal, but merely *permitted* them to do so. (Dkt. No. 103.) And, nothing in the stipulation or the partial judgment entered thereafter precludes the parties remaining in the litigation from pursuing a successive motion for summary judgment in the district court. (Dkt. Nos. 103, 104.)

Rather, the stipulation and certification of the partial judgment pursuant to Rule 54(b) was simply a formality that had to be observed for *Martinez* to obtain

16

interlocutory review of the partial summary judgment order. See *American States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 884 (9th Cir. 2003) (partial summary judgment orders generally not immediately appealable); *Sierra Club v. Department of Transportation*, 948 F.2d 568, 572 (9th Cir. 1991) (partial summary judgment not immediately appealable unless certified in compliance with rule 54(b)).

On the other hand, *denials* of summary judgment based on qualified immunity are appealable interlocutory orders, despite their lack of finality. *Mitchell v. Forsyth*, 472 U.S. 511, 525-527 (1985); *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 610, fn. 10 (9th Cir. 2019). And while the failure to timely appeal a denial of qualified immunity may preclude review of that particular order (see *Price v. Kramer*, 200 F.3d 1237, 1244 (9th Cir. 2000) (decision not to appeal initial denial of qualified immunity precludes review of that order on appeal from a final judgment)) it does not preclude a party from bringing a successive motion for summary judgment on the same grounds, or seeking review from the district court's order on a successive motion. *Hoffman v. Tonnemacher*, 593 F.3d 908, 910 (9th Cir. 2010) (successive motions for summary judgment based on qualified immunity are permissible); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997) (successive motion for summary judgment on qualified immunity permissible, and a defendant's failure to appeal initial denial does not preclude an appeal from an order on a second motion); *Francisco Jose Rivero v.*

17

*City and County of San Francisco*, 316 F.3d 857, 863 (9th Cir. 2002) (failure to appeal pretrial order denying qualified immunity does not preclude appeal from post-trial order denying same defense); see also *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996) (successive appeals from successive orders denying qualified immunity are permissible).

Second, the rule of waiver argued by Martinez does not apply in the context presented here, where the party against whom waiver is asserted never brought a prior appeal, and is not the appealing party here.

As Martinez exhaustively points out, there are numerous circumstances under which a party may waive the defense of qualified immunity. AOB 22. For example, where qualified immunity is denied on summary judgment based on disputed facts, the issue must be raised again in a Rule 50(b) motion to preserve the defense for appellate review. *Ortiz v. Jordan*, 562 U.S. 180, 188-190 (2011). One cannot assert a qualified immunity defense in a Rule 50(b) motion without first preserving the issue in a Rule 50(a) motion. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009). The district court may not grant summary judgment based on qualified immunity *sua sponte*; the defense must be squarely presented to the district court below or it is waived. *Summe v. Kento County Clerk's Office*, 604 F.3d 257, 269-270 (6th Cir. 2010). Similarly, the defense can't be raised in the district court for the first time following a remand

18

from a prior appeal. *Sales v. Grant*, 224 F.3d 293, 296 (4th Cir. 2000). None of these scenarios are presented here.

Martinez next cites numerous cases for the proposition that an issue not raised in a prior appeal cannot be raised on remand or in a successive appeal. AOB 24-26. But those cases are all inapposite for the same reason: they address waiver *as between the parties to the prior appeal*,[3] and here, High was not a party to the prior appeal at all.

_____

[3] In *Jiminez v. Franklin*, 680 F.3d 1096 (9th Cir. 2012), defendants appealed from a judgment but did not appeal their joint and several liability for fees. When they paid less than the full amount of the fee award and plaintiff appealed, the court held defendants had waived any argument that they did not have joint and several liability. *Id.* at 1098-1100. *United States v. Radmall*, 340 F.3d 798, 801-802 (9th Cir. 2003) and *United States v. Nagra*, 147 F.3d 875, 882 (9th Cir. 1998), both criminal cases, held that defendants who could have raised an issue in a prior appeal they had brought, but did not, had waived their ability to raise that issue in a subsequent appeal. In *Munoz v. City of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982) the court held that defendants who had challenged findings regarding preliminary injunctive relief in a prior appeal could not raise a new issue not previously raised in a second appeal. The discussion of the law of the case in *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987) held a party who brought a prior appeal wherein it failed to challenge a back-rent decision could not raise that issue later. In *Thyssen Steel Co. v. M/V Kavo Yerakas*, 911 F.Supp. 263, 265-268 (S.D. TX 1996) when a plaintiff appealed a grant of summary judgment and the matter was remanded on a very specific point, the district court held the law of the case precluded plaintiff from raising a new issue that it could have, but did not raise before. In *Keepseagle v. Purdue*, 856 F.3d 1039, 1051-1056 (D.C. Cir. 2017) the court found appellant had waived claims on appeal that he simply failed to first present to the district court in the first instance. In *Medical Ctr. Pharm. v. Holder*, 634 F.3d 830, 832 (5th Cir. 2011) the court held that the FDA's failure to raise an issue concerning record inspections in their first appeal constituted a forfeiture of that issue, and the district court erred when it reopened and reconsidered that issue on remand. In *Crocker v. Piedmont Aviation*,

Even the cases that Martinez seeks to distinguish as "exceptions" to the waiver rule are of no assistance to her here. In fact, *Rivero v. City and County of San Francisco*, 316 F.3d 857 (9th Cir. 2002) specifically notes that "the rule permitting a defendant to take an interlocutory appeal after a denial of a motion based on qualified immunity is not a rule *requiring* the defendant to take that appeal." *Id.* at 863 (emphasis added). In that case, the fact that defendants did not appeal a pre-trial denial of their motion for summary judgment based on qualified immunity did *not* preclude them from appealing a post-trial denial of the motion for judgment as a matter of law on that same issue. *Id. U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1037-1038 (9th Cir. 1986) held the law of the case did not prevent a party from raising a real-party-in-interest issue for the first time on a successive appeal because the appellate court would not have had jurisdiction over that issue in the prior appeal. Again, *U-Haul* addressed successive appeals

---

49 F.3d 735, 739-741 (D.C. Cir. 1995) the court exercised its discretion to *not* apply the waiver doctrine to an *appellee* who did not raise a statute of limitations defense in *response* to a prior appeal, finding that requiring an appellee to put forth every conceivable defense to an appeal could "increase the complexity and scope of appeals more than it would streamline the progress of the litigation" and place additional burdens on the appellate court. In *Shearer v. Titus*, 916 F.3d 293, 302-303 (3rd Cir. 2019) the court held a bankruptcy trustee had waived any challenge to the bankruptcy court's use of a particular method and formula by failing to raise it there or on an initial appeal to the district court. And finally, *Lowery v. Channel Comm'n, Inc. (In re Cellular 101, Inc.)*, 539 F.3d 1150, 1153-1156 (9th Cir. 2008) confirmed that a party who brought multiple prior appeals and failed to raise a settlement and release agreement as an issue in any of them, could not assert the defense in subsequent proceedings or in a subsequent appeal.

20

*brought by the same party*, and here High has brought no appeals at all. *U-Haul* simply has no application to the present case one way or the other.

The takeaway from the plethora of cases relied upon by Martinez is that the waiver rule applies only where *the party against whom waiver is being asserted* has brought a prior appeal and failed to raise the issue asserted in the successive appeal. That is not this case. High did not bring a prior appeal, fail to raise the issue of qualified immunity, and then seek to raise the issue again on remand or in a successive appeal. As Martinez repeatedly emphasizes, High was not a party to the first appeal at all; the appeal was brought by Martinez and challenged only the grant of summary judgment based on qualified immunity for the other officers. High had every right to forego an appeal from the first summary judgment order denying her qualified immunity, and bring a successive motion on remand after this Court issued its decision on Martinez's initial appeal.

Martinez's real complaint here, although she does not term it as such, is that the district court allowed High to bring a successive motion for summary judgment on her qualified immunity defense. That decision was discretionary, as discussed below, and no abuse thereof has been shown.

///

///

21

**B. The district court had the discretion to entertain High's successive motion for summary judgment based on qualified immunity, and did not abuse that discretion here.**

It is settled in this circuit that "a district court may permit successive motions for summary judgment on qualified immunity." *Hoffman, supra,* 593 F.3d at 910; *Knox, supra,* 124 F.3d at 1106. Orders denying summary judgment are subject to reconsideration at any time, and so "the denial of summary judgment does not preclude a contrary later grant of summary judgment." *Hoffman,* at 911. Successive motions for summary judgment may serve the important function of facilitating the "'just, speedy, and inexpensive' resolution of suits." *Id.* And, the failure to appeal an earlier denial of summary judgment does not preclude a successive motion or an appeal from an order on a successive motion. *Knox, supra,* at 1106.

There are a number of scenarios that may render a successive motion for summary judgment particularly appropriate: (1) an expanded factual record, (2) an intervening change in the law, and/or (3) the need to correct a "clear error or prevent manifest injustice." See *Hoffman,* 593 F.3d at 911; *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995). A district court's decision of whether to allow a successive motion for summary judgment on the issue of qualified immunity is reviewed for abuse of discretion. *Hoffman*, *supra,* at 910.

22

Here, the district court initially denied High leave to bring a successive motion for summary judgment based on qualified immunity without prejudice, given an impending trial date for the remaining parties with matters still to be tried. Dkt. Nos. 134, 145, 204, p. 2. But after the district court's docket made it necessary to continue the trial date twice, it permitted the motion. Dkt. Nos. 188, 203, 204, 205. The district court did not abuse its discretion in doing so. Not only had there been an intervening change in the law, specifically in the "law of the case" given this Court's decision in the initial appeal, but a determination of whether High was entitled to qualified immunity in light of that decision could only serve to "prevent a manifest injustice" that would undeniably occur were High forced to proceed to trial if the immunity in fact applied. "Qualified immunity is immunity from suit [altogether], not just a defense to liability." *Knox, supra,* 124 F.3d at 1106. "Allowing a successive summary judgment motion potentially can save all concerned the far greater expense of a trial." *Hoffman, supra,* at 912.

Given that this Court's decision in the prior appeal determined that *Okin* was not "clearly established law" in this circuit, and the district court had relied upon that case in denying High's initial motion for summary judgment (Dkt. No. 91, pp. 63-64), High had ample incentive to bring a successive motion and the district court had ample reasons to allow it. Martinez could no longer rely on *Okin* as

23

"clearly established law" to preclude the defense of qualified immunity. And, this Court had clearly set forth the contours of the law "going forward." *Martinez, supra,* 943 F.3d at 1276. As such, once the trial was continued and any avenue of prejudice due to delay was eliminated, the district court acted well within its discretion by allowing the successive motion.

## II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR HIGH BASED ON QUALIFIED IMMUNITY.

### A. The law of qualified immunity.

Police officers are entitled to qualified immunity where their conduct does *not* violate a clearly established constitutional or statutory right "of which a reasonable person would have known." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018). "'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.' [Citation.]" *Kisela*, *supra*, at 1152. It is not necessary that there be a case directly on point to put an officer on notice that the right violated was clearly established, but there must be precedent that puts the violation "beyond debate." *Id.* at 1152 "'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 1152.

Our Supreme Court has "repeatedly told courts… not to define clearly established law at a high level of generality." *Kisela, supra,* at 1152 (internal quotations and citations omitted); *Martinez, supra*, 943 F.3d at 1275. Clearly

established law is that which is "particularized to the facts of the case" and "sufficiently definite that any reasonable official… would have understood" they were violating a constitutional right. *Kisela* at 1152, internal quotations omitted (citing *White v. Pauly*, 137 S.Ct. 548, 552 (2017); *Ashcroft v. Al-Kidd*, 536 U.S. 731, 742 (2011); *Plumhoff v. Rickard*, 572 U.S. 765, 778-779 (2014).) While there "need not be a case directly on point for a right to be clearly established[,]" there must be binding precedent which puts the question "beyond debate." *Martinez* at 1275 (internal quotations and citations omitted). Moreover, that precedent must be "controlling" which in this case means it must either come from the Supreme Court, the Ninth Circuit, or have been "embraced by a 'consensus' of courts" outside this jurisdiction. *Id.* at 1275.

To determine whether an officer is entitled to qualified immunity, the court must evaluate (1) whether the alleged facts "make out a violation of a constitutional right" and (2) whether that right was clearly established at the time. *Martinez, supra,* at 1270. The court need not "wade into" the first prong if, even assuming a constitutional right were violated, the second prong is not satisfied. *Id.* The burden is on the plaintiff to point to the binding, clearly established law that would have put the defendant on notice their conduct violated a constitutional right. *Elder v. Holloway*, 510 U.S. 510, 514 (1994); *Schafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017).

25

Here, Martinez's appeal addresses only the second prong of the analysis; whether the law was clearly established in 2013 that High's alleged conduct violated Martinez's constitutional right to due process.

**B. Even taking the facts most favorable to Martinez as true, there was no binding, clearly established law in 2013 that would have put High on notice her conduct violated a constitutional right.**

Martinez's substantive due process claim against High was premised on the same legal theory as that posited against Officer Hershberger, Officer Yambupah, and Sergeant Sanders. Martinez alleged High's disclosures to Pennington placed her at greater risk of abuse, and thereby exposed High to liability under the state-created danger doctrine. In general, the state has no duty to protect individuals from the conduct of third parties absent a special relationship, but under the state-created danger doctrine it may be subject to liability where its conduct "'affirmatively places [the plaintiff] in danger by acting with "deliberate indifference" to a "known or obvious danger."' [Citations.]" *Martinez, supra,* 943 F.3d at 1271. To establish liability under this doctrine, a plaintiff must prove (1) that the defendant's conduct "exposed her to an actual, particularized danger that she would not otherwise have faced[,]" (2) that her injuries were foreseeable, and (3) that the defendant was deliberately indifferent to a "known danger." *Id.*

It bears emphasizing that in addressing Martinez's claims against Officer Hershberger, Officer Yambupah, and Sergeant Sanders, this Court found the *only*

conduct that could satisfy the first element of the state-created danger doctrine
(affirmative conduct that exposed Martinez to a particularized risk she did not face
before) was (a) Hershberger's disclosure to Pennington that Martinez had
previously made a report of abuse *combined with* her comments that conveyed
"contempt" for Martinez, [4] and (b) Sanders' instruction to Yambupah not to arrest
Pennington *combined with* his positive comments about the Pennington family.[5]
*Martinez, supra,* at 1272-1273. This Court held the law was not "clearly
established" that such conduct would put a reasonable officer on notice their
conduct violated Martinez's due process rights, because the most factually
analogous case, *Okin*, was not controlling in this jurisdiction and had not been
embraced by a consensus of courts. *Martinez, supra,* 943 F.3d at 1276. Therefore,
Hershberger and Sanders were entitled to qualified immunity. Going forward, this
Court set forth the precise "contours" of the law and held there is a clear
constitutional violation "when an officer reveals a domestic violence complaint
made in confidence to an abuser *while simultaneously making disparaging*
*comments about the victim in a manner that reasonably emboldens the abuser to*

---

[4] Martinez is incorrect in stating that none of the officers involved in the prior
appeal "betrayed Martinez's confidence, only High." AOB 33.
[5] As noted earlier, this Court had little difficulty determining that a reasonable trier
of fact could find for Martinez on the second and third elements of her claim;
Pennington's assaults of Martinez following the officers' conduct was foreseeable,
and the officers ignored an obvious and known risk to Martinez. Id. at 1273-1274.

27

*continue abusing the victim with impunity*." *Martinez* at 1276-1277, emphasis added.

This Court's decision in *Martinez* was binding on the district court as the law of the case on remand. See *United States v. Jingles*, 702 F.3d 494, 499, 502 (9th Cir. 2012) (on remand, district court may not reexamine issue previously decided by the same court or a higher court in the same case). As such, the district court could no longer rely on *Okin* to deny qualified immunity to Martinez, given that *Okin* was not "clearly established" law at the time of High's alleged improper disclosures.

Martinez nevertheless argues that this Court's opinion in the prior appeal does not support affirmance of the district court's grant of qualified immunity for High on her successive motion, because it did not address whether *Kennedy v. Ridgefield City*, 439 F.3d 1055 (9th Cir. 2006) was sufficiently analogous to the present case to apply to High's conduct. AOB 32. Although High was not a party to the prior appeal and this Court did not address her conduct specifically, *Martinez* did reference *Kennedy* numerous times in its discussion of the state-created danger doctrine, and it made a specific holding about the "contours" of the state-created danger doctrine under circumstances where an officer reveals a confidential domestic violence complaint to the alleged abuser:

///

> "We hold today that the state-created danger doctrine
> applies when an officer reveals a domestic violence
> complaint made in confidence to an abuser *while
> simultaneously making disparaging comments about the
> victim in a manner that reasonably emboldens the abuser*
> to continue abusing the victim with impunity."

*Martinez,* 943 F.3d at 1276-1277 (emphasis added).

High's conduct does not fall within those contours. The evidence concerning High's conduct is that on September 3, 2013, she improperly disclosed to Pennington a confidential report of domestic violence Martinez had made several months prior, on May 29. There is no evidence of any simultaneous disparaging comments by High, and so the law governing whether a mere disclosure of a confidential domestic violence report in and of itself satisfies the state-created danger doctrine was not only unclear at the time of High's conduct in 2013, it has not been clearly established under the contours set forth in *Martinez* either.

Martinez argues that *Kennedy v. Ridgefield City*, 439 F.3d 1055 (9th Cir. 2006) constituted the "clearly established law" that should have put High on notice her disclosures violated Martinez's substantive due process rights. AOB 31-36. Martinez characterizes the holding of *Kennedy* as prohibiting law enforcement from informing a "would-be assailant of a witness' confidential allegations against him, thereby creating a danger that otherwise would not have existed." AOB 34. She then argues the district court improperly distinguished *Kennedy* on the grounds it was not a domestic violence case. AOB 34-35. Not only is the purported holding

29

of *Kennedy* stated at a too-high level of generality, [6] the differences between *Kennedy* and the present case go far beyond the mere relationship between assailant and plaintiff. The key distinction is that the confidential disclosure made in *Kennedy* was *coupled with* law enforcement's representations to the plaintiff that she would be notified of any disclosure first, and subject to police protection afterwards.

In *Kennedy*, plaintiff brought a section 1983 action against Ridgefield City and a city police officer after her thirteen-year-old neighbor shot and killed her husband, and shot and severely wounded her. *Kennedy, supra,* 439 F.3d at 1057. The shooting occurred shortly after the neighbor learned plaintiff had called the police and alleged he had molested plaintiff's nine-year-old daughter. *Id.* When plaintiff reported the molestation of her daughter, she informed the responding officer of the neighbor's "known, violent tendencies" and the officer assured her she would be notified prior to any police contact with the neighbor's family concerning her allegations. *Id.* at 1057-1058. The officer did not notify plaintiff before contacting the neighbors, but advised plaintiff he had done so shortly thereafter. *Id.* at 1058. When plaintiff expressed fear for her safety, the officer

---

[6] As the district court recognized at argument on the first motion for summary judgment, Supreme Court and Ninth Circuit decisions subsequent to *Kennedy* have clarified that the "clearly established" law required to deny an officer qualified immunity must be more fact-specific than the generalized principle relied on by *Kennedy*. See Dkt. No. 91, pp. 23-25, 30.

assured her police would patrol her house and the neighbor's that evening "to keep an eye on" the neighbor. *Id.* Given the lack of prior notice, the time day, and the officer's representation of a patrol presence that evening, plaintiff and her husband remained in their home that night and planned to leave the next day. *Id.* Early the next morning, the neighbor broke into plaintiff's home and shot her and her husband as they slept. *Id.* The district court denied the officer's motion for summary judgment based on qualified immunity, concluding a trier of fact could find the officer gave plaintiff a false sense of security. *Id.* at 1059.

This Court affirmed, holding the law was clearly established that "[u]nder the state-created danger doctrine, a police officer may be liable for actions that create or increase a known or obvious danger to an individual that he or she would otherwise not face." *Kennedy,* 439 F.3d at 1067. The officer's representations that plaintiff would be notified before police contacted the neighbors, and that police would patrol hers and the neighbors' homes that evening gave plaintiff a false sense of security she would not otherwise have had, which led her to remain in her home that evening and made her vulnerable to her neighbor's assault. *Id.*

The *Kennedy* court found sufficiently analogous "controlling law" from the Ninth Circuit in the case of *L.W. v. Grubbs*, 974 F.2d 119, where a nurse at a medium security custodial institution was raped and terrorized by an inmate. Although her employer had represented that she would not be working with violent

31

sex offenders, it subsequently allowed an inmate prone to violence against women to work with her unsupervised. Plaintiff, who had relied upon her employer's representations and therefore not taken precautions she might have otherwise taken, was assaulted and the court in *Grubbs* held plaintiff had stated a claim for violation of her due process rights. See *Grubbs, supra,* at 121-123. *Kennedy* held that as in *Grubbs,* the plaintiff had "relied upon the state actor's representation and did not take protective measures she otherwise would have taken, and the state's action made plaintiffs vulnerable to a particularized danger they would not have faced but for that action." *Kennedy,* 439 F.3d at 1067.

The facts of *Kennedy* are readily distinguishable from those presented here and would not have put High on notice that her disclosure alone violated Martinez's right to due process. Unlike *Kennedy*, High *made no representations to Martinez upon which she relied*, or which gave her a false sense of security. Indeed, at the time High allegedly informed Pennington that Martinez had made complaints to the Clovis Police several months prior, Pennington *already knew* Martinez had reported multiple instances of abuse. He had been arrested, a restraining order had issued, and criminal proceedings were underway. Indeed, Martinez was set to testify at his preliminary hearing that very day. High's alleged disclosure, without more, did not place Martinez in any particularized danger she

32

did not already face; High did not "create a danger that otherwise would not have existed" as was the case in *Kennedy*. See AOB 34.

Just as this Court held in the initial appeal that there must be a disclosure of a domestic violence report *combined with* disparaging remarks that "embolden" the perpetrator, *Kennedy* also held the due process violation arose from a disclosure *combined with* an empty promise to notify the victim first and/or to provide police protection immediately following the disclosure. Martinez points to no case where a disclosure alone has been held to violate a constitutional right. [7] As a result, her assertion that the district court erred in granting High qualified immunity must fail.

---

[7] In a footnote, Martinez claims there are "many other" cases from other jurisdictions that "clearly establish" the same right she claims is set forth in Kennedy. None of those case are of any assistance to Martinez. *Phillips v. County of Allegheny*, 515 F.3d 224, 235-243 (3rd Cir. 2008) addresses only whether plaintiff adequately plead all the elements necessary for a state-created-danger claim, not whether those allegations would violate a clearly established right. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1059-1060 (6th Cir. 1998) involved a city's release of private information in police officers' files to a criminal defendant's counsel pursuant to the state's public records act and whether that disclosure violated the officers' right to privacy. *Nelson v. City of Madison Heights*, 141 F.Supp.3d 726 (E.D. MI 2015) not only post-dates the conduct at issue here, it is a district court case out of another jurisdiction which, according to LEXIS, has only been cited four times by other district courts. Finally, *McIntyre v. United States*, 336 F.Supp.87, 94, 96-100 (D.C. MA 2004), involving the disclosure of an informant's identity to the persons on whom he was informing, is a district court criminal case from another jurisdiction that has only been cited by district and state courts in other jurisdictions. Not only is it factually distinguishable, it would not have been "controlling law" in this jurisdiction of which High should have known. Notably, Martinez cited none of these cases in her opposition to High's motion for summary judgment in the district court, instead

## **CONCLUSION**

There is no authority to support Martinez's claim that High waived her ability to bring a successive motion for summary judgment on the issue of qualified immunity. Successive motions are permissible even where a party does not appeal from the denial of an initial motion. The district court did not abuse its discretion in allowing High to bring her motion here.

On the merits, the district court properly found High was entitled to qualified immunity because there was no clearly established law that the disclosure of a confidential domestic violence report to an alleged abuser who was already under investigation and involved in criminal proceedings arising out of said abuse, without more, constituted a violation of Martinez's right to due process. The judgment for High should be affirmed.

Dated: April 18, 2023                     Respectfully submitted,

                                          Suzanne M. Nicholson, Attorney at Law

                                           /s/ Suzanne M. Nicholson
                                          Suzanne M. Nicholson
                                          Attorney for Appellee, Channon High

---

citing a spate of cases involving claims of disparate treatment or equal protection violations involving domestic violence victims. Dkt. No. 208.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** 22-16335

The undersigned attorney or self-represented party states the following:

[ x ]   I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**  /s/ Suzanne M. Nicholson          **Date**  April 18, 2023

35

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-16335

I am the attorney or self-represented party.

**This brief contains 8,386 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Suzanne M. Nicholson      **Date** April 18, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** 22-16335

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[  ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are __NOT__ Registered for Electronic Filing:**
[  ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)***:**

ANSWERING BRIEF OF APPELLEE CHANNON HIGH

**Signature** /s/ Suzanne M. Nicholson          **Date**  April 18, 2023

37